**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**RUBIN C. SLADE, JR.,**

        **Petitioner,**

**v.**                                                  **Civil Action No. 2:09cv72
Criminal Action No. 2:03cr1
(Judge Keeley)**

**UNITED STATES OF AMERICA,**
        **Respondent.**

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On June 16, 2009, the *pro se* petitioner, an inmate incarcerated at the United States Penitentiary - Hazelton, in Bruceton Mills, West Virginia, filed a Motion Under 28 U.S.C. §2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody,[1] alleging ineffective assistance of counsel, prosecutorial and judicial misconduct, insufficient evidence to support his conviction, and lack of jurisdiction. This case, which is pending before me for initial review and report and recommendation, pursuant to LR PL P 83.15, et seq., is ripe for review.

### II. FACTS

**A. Conviction and Sentence**

On January 7, 2003, the Grand Jury returned a three-count indictment against petitioner.[2] On February 24, 2003, a three-count superseding indictment was filed against petitioner.[3] On June 16, 2004, after a three-day jury trial, a verdict[4] was entered against petitioner, finding him guilty on

---

[1] (Dkt. 121).

[2] (Dkt. 9).

[3] (Dkt. 14).

[4] (Dkt. 69).

Count 1 and 2, bank robbery and brandishing a firearm, in violation of Title 18, U.S.C. §§ 2113(a) and (d), and 924(c)(1)(A)(ii)[5] respectively. On March 21, 2005, petitioner was sentenced to two consecutive life sentences, one on each count. Judgment was entered on March 31, 2005.[6]

**B. Appeal**

On April 5, 2005, petitioner filed a notice of appeal of his conviction.[7] On appeal, petitioner contended that: the district court abused its discretion when it refused to investigate the suggestion that jurors were unable to hear the trial proceedings; the district court erred in counting his 1981 Virginia robbery conviction as a "strike" for purposes of the federal "three strikes" statute, and the district court imposed an unreasonable variance sentence for his brandishment conviction when it increased a recommended guideline sentence of seven years to life imprisonment. On May 11, 2007 the judgment of the district court was affirmed by the Fourth Circuit in an unpublished opinion. Mandate issued on June 4, 2007.[8] Petitioner did not file a motion for rehearing.

Although petitioner's habeas corpus petition denies it and the district court's docket does not reflect it, a review of the Fourth Circuit's docket of his appeal reveals that petitioner did in fact, file a petition for writ of certiorari with the United States Supreme Court on May 23, 2007.[9] On June

---

[5] Count 3, a forfeiture allegation, was ultimately dismissed on joint motion of both parties, by Order entered on October 25, 2004. (Dkt. 75). The money and items earlier stipulated by the parties as identifiable proceeds of the bank robbery were returned directly to the bank, rather than delaying their return and diminishing them by using the government forfeiture process.

[6] (Dkt. 94).

[7] (Dkt. 96).

[8] (Dkt. 117).

[9] (4th Cir. Dkt. 68) (05-4389). This petition for a writ of certiorari did not appear on the district court's docket and was overlooked in the Hill v. Braxton notice issued to petitioner on July 9, 2009. Although this slightly changes the date of final judgment from what was stated in the Hill v. Braxton notice, the end result of the analysis is the same: petitioner's 2255 motion remains untimely.

25, 2007, the petition for certiorari was denied.[10]

## C. Federal Habeas Corpus

Petitioner raises five grounds with numerous sub-issues in his § 2255 motion:

**I)** that his counsel was ineffective because they:

(1) "[failed to] consult with petitioner pre-trial about trial strategy;

(2) [failed to] suppress the exculpatory evidence of the pillow case and Movant's pretrial communication statement between him and his spouse;

(3) [failed to] seek dismissal of the superseding indictment on the grounds that: (a) 30 days had elapsed between the first and second one as a means to contravene the ("70") day trial rule that (b) was nothing more than abuse of process to punish the Movant as a result of his refusal to plead guilty to the original presentment on the blind trust that the government will not sentence entrap [sic] Movant into a life sentence in light of the fact there simply was no reason for the United States failing to raise count two in the first indictment;

(4) [failed to] . . . interview[] witnesses for the defense of other persons in the bank;

(5) [failed to] . . . object[] to the bank employees [sic] implication of the use of a firearm during the robbery when bank surveillance system controverts these claims in light of the fact that no firearm was found in connection to the defendant;

(6) [failed to] . . . move[] the court to dismiss count two on insufficiency of the evidence because no firearm was proven to have been used let alone being real in the form of a replica (or) toy weapon which is not chargeable under Section 924(c) which counsel could have argued;

---

[10] (4th Cir. Dkt. 71) (05-4389).

(7) dropp[ed] the diminished capacity defense after two qualifying physicians concurred with one another that such a disability existed sufficient enough to support such a claim;

(8) [failed to] . . . object[] and constitutionally challeng[e] the untimely sentence enhancement notice that could not be brought by the government on the grounds that: a) 21 U.S.C. § 851(a) is a drug enhancement provision having no application to the Federal Bank Robbery Act; and b) the Federal Bank Robbery statute's maximum of ("25") years trumps the three strikes law under 18 U.S.C. § 3559 et seq. which the robbery acts sentencing scheme was never repealed under 18 U.S.C. § 2113(a) to accommodate the Sentencing Reform Act;

(9) [failed to] . . . object[] to use of a conviction that was over ("15") years old resulting in Movant's being sentenced to life imprisonment under Section 3559;

(10) open[ed] the door during trial and sentencing that was prejudicial to Movant's defense of information relating to Miranda rights and prior convictions;

(11) [failed to] . . . cross-examin[e] government witness during the use of a firearm testimony;

(12) [failed to] . . . withdraw[] as counsel of record after Movant made the request several times by expressing his distrust of trial counsel's motives in not raising necessary pretrial motions and objections;

(13) [appellate counsel] . . . refused to consult with Movant about any issues Movant may want to raise on appeal [sic];

(14) appellate counsel did not raise any of the issues enumerated from one to twelve herein under either the harmless (or) plain error doctrines;

(15) appellate counsel cit[ed] two cases that did not support argument on appeal as

4

pointed out by government counsel."

**II)** "Prosecutorial misconduct and vindictiveness"was committed and expressed, by

(1) use of the superseding indictment as a means to "contravene Movant's fast and speedy trial rights as a measure to punish the Movant for not allowing the ("AUSA") to sucker the Movant into an open plea resulting in the life sentence counsel was trying to gain without a trial;

(2) coaching every government witness into acts of Grand Jury and Jury Trail [sic] conviction under 18 U.S.C. §924(c) by playing on government witnesses [sic] moral views of suborn criminal justice [sic] based on a Hollywood fiction that the courts will allow the Movant to escape full liability in order to allow him to prey on other innocence's [sic];

(3) tampering with Movant's defense by making promises of favorable treatment towards defense counsel's other clients in any future prosecution;

(4) misstating the use of a firearm evidence with the jury despite the fact that the bank surveillance system shows otherwise;

(5) having *ex parte* communications with members of the Grand Jury [] and Trail [sic] Jury that was designed to deprive Movant of a fair proceeding."

**III)** Judicial misconduct was committed, in that the "presiding jurist" in his case "has been

(1) accepting bribes both monetary and political under the guise of guess-speaker-ship [sic] fees at law enforcement functions sponsored by police unions both on the State and Federal levels involving Totalitarian movements and corrupt influences to undermine the Constitution and laws of the United States;

(2) engaging in *ex parte* communications with federal prosecutors during holidays and off hours at the jurists [sic] personal residence in order to choreograph court proceedings in

5

criminal cases to give the appearance of fair justice;

      (3) implying threats on defense counsel . . . to prevent effective assistance;

      (4) having *ex parte* communications with members of the Federal Grand Jury to influence their decision to indict by impressing jurors with the courts [sic] position as a federal judge seeking to protect the public from predators;

      (5) failing to inquire into the obvious conflict of interest between counsel and Movant once the Court had been put on constructive notice that a problem existed and did nothing to resolve this situation."

**IV)** Insufficient evidence exists to support his conviction "because no evidence was presented to th jury proving that petitioner brandished (or) displayed a firearm during the bank robbery which the bank's surveillance system conclusively refutes this manufactured government allegation because a video tape cannot be impeached as a matter of law in light of the fact that no weapon was found on Movant and even ["IF"] bank employees seen one [sic] there is no proof the weapon was real and could have been a gun replica (or) toy not capable of discharging a projectile which Section 924(c) applies only to operable firearms [sic]."

**V)** The court was without jurisdiction to impose the two life sentences because each of the two counts petitioner was convicted of carried their own statutory maximums, and 18 U.S.C. §§ 924(c) and 2113(a) do not authorize life sentences "unless certain criterions [sic] are meet [sic] by the government which has not been done and the three strikes provision did not effectively repeal under the rule of lenity in light of the fact that the government through the sentencing court relies on a conviction more than ("15") years old[.]" (Dkt. No. 121 at 2 - 7).

**D. Recommendation**

6

Based on a review of the record, the undersigned recommends that the petitioner's §2255 motion be denied and dismissed from the docket as untimely.

### III. ANALYSIS

**A. Statute of limitations for filing a 28 USC §2255 Motion**

In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted, establishing a one-year limitation period within which to file any federal habeas corpus petition. The period of limitation will begin to run from the latest of the following four dates:

> (A) the date on which the judgment of conviction becomes final;
>
> (B) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from making a motion by such governmental action;
>
> (C) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255.

In most cases, a judgment of conviction becomes final when the time for filing a direct appeal expires. Aikens v. United States, 204 F.3d 1086, 1089, n.1 (11th Cir. 2000). There are two recognized exceptions to this general rule which apply when a federal prisoner seeks direct appellate review of his conviction or sentence. First, if upon disposition of a direct appeal, a federal prisoner files a writ of certiorari with the U.S. Supreme Court, the conviction becomes final when the Supreme Court either denies certiorari or issues a decision on the merits. *See* Washington v. United States, 243 F.3d 1299, 1300 (11th Cir. 2001). Second, if the federal prisoner does not timely file a certiorari petition after disposition of his direct appeal, the conviction becomes final on the date on

which the prisoner's time for filing such a petition expires, or ninety days after the entry of the judgment on direct appeal. *See* Clay v. United States, 537 U.S. 522, 532 (2003).

The Fourth Circuit has held that, under some circumstances, the AEDPA statute of limitations is subject to equitable modifications such as tolling. United States v. Prescott, 221 F.3d 686, 687-88 (4th Cir. 2000). Nonetheless, "rarely will circumstances warrant equitable tolling." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003). In order to be entitled to equitable tolling, petitioner bears the burden of presenting evidence which shows that he was prevented from timely filing his § 2255 petition because of circumstances beyond his control, or external to his own conduct, and that it would be unconscionable, or that a gross injustice would occur, if the limitation were enforced. Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000). To make such a showing, petitioner must also show that he employed reasonable diligence in investigating and bringing his claims. Miller v. New Jersey State Department of Corrections, 145 F.3d 616, 617 (3rd Cir. 1998).

Here, after a 3-day trial and guilty verdict, the petitioner was sentenced on March 21, 2005; judgement was docketed on March 31, 2005. Petitioner filed his Notice of Appeal on April 5, 2005. The Fourth Circuit of Appeals affirmed his conviction and sentence on May 11, 2007. Mandate issued on June 4, 2007. Petitioner had already filed his petition to the United States Supreme Court for a writ of certiorari on May 23, 2007. The petition for certiorari was denied on June 25, 2007. Therefore, petitioner's conviction became final on June 25, 2007, the date his petition for certiorari was denied. Accordingly, he had until June 25, 2008 to file his habeas corpus petition under AEDPA.

Petitioner claims he originally filed this § 2255 petition on February 12, 2008, but a review of his docket shows no record of any § 2255 motion being filed until June 16, 2009, nine days short

8

of one year after the one-year statute of limitations had already expired.[11]

On April 4, 2009, petitioner sent a letter to the Clerk of Court,[12] "requesting the status quo concerning my motion filed 1/12/08, Motion under 28 U.S.C. § 2255 . . . This motion was filed and sent 2/12/08...I have not yet heard or received anything in regards to my motion. It has passed the year mark....I never received my reply[]." Petitioner informed the Court of his change of address and asked that if a response to his motion had been filed, that it be forwarded to the new address. The letter, received on April 7, 2009, was docketed that same day, along with a note indicating that a copy of his docket sheet had been sent to him and that his address had been updated.

Approximately *nine and a half weeks later,* on June 15, 2009 petitioner wrote another letter, this time to U.S. District Court Judge Irene Keeley, attaching a "duplicate" copy of the *undated* purported original § 2255 motion,[13] claiming that he had originally filed it on February 12, 2008, had written later to request a status update and had received, in response, a copy of his docket sheet showing that no § 2255 had ever been filed. He asked that if the Court did not have any record of his February 12, 2008 § 2255 motion that he be given help "in the form of a lawyer or other counsel." Instead, the instant § 2255 motion, received by the court on June 16, 2009, was docketed as filed on that date, with petitioner's letter attached as explanation.

---

[11] Even if the petitioner could have been given the benefit of the "mailbox rule," his petition would still be grossly untimely as the petition was sent on June 14, 2009 and the envelope in which it was received is postmarked the June 15, 2009.

[12] Docket No. 119.

[13] The instant § 2255 motion, alleged by petitioner to be a copy of the one originally mailed on February 12, 2008, was undated and had no proof of service attached to show that it had been originally filed on February 12, 2008, or, in fact, that it had ever been filed previously at all. It has a hand-written note by petitioner at the top right corner of its first page, saying: "Copy sent Feb. 12, 2008. This date May 6 2009. Sent June 14, 2009. Rubin Slade."

9

On July 9, 2009, Hill v. Braxton[14] notice was issued to petitioner,[15] warning him that his 2255 motion was untimely and would be recommended for dismissal if, within 30 days, he did not respond and demonstrate that his petition was in fact timely, or that he was entitled to equitable tolling of the statute of limitations. Almost two months have passed since that notice was sent. Petitioner has never responded.

Even assuming, *arguendo,* that petitioner did actually mail his "original" *undated* §2255 motion[16] on February 12, 2008 as he claims, he waited until June 16, 2009, nine and one half weeks after April 7, 2009, the approximate date when he learned, via receipt of a copy of his docket sheet, that the §2255 motion had not been received by the court, to provide the court with a "duplicate" copy. Furthermore, petitioner has failed to avail himself of the additional opportunity to save his habeas corpus petition, afforded via the July 9, 2009 Hill v. Braxton notice, by providing any additional information to show he did, in fact, timely file his motion or that he otherwise is entitled to equitable tolling.

In this case, despite adequate notice from the Court, the petitioner has failed to show that he is entitled to equitable tolling or that his petition is otherwise timely.

## IV. Recommendation

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion and **DISMISSING** this case with prejudice.

---

[14] *See* United States v. Sosa, 364 F.3d 506 (4th Cir. 2004); Hill v. Braxton, 277 F.3d at 707.

[15] (Dkt. 125).

[16] Rule 3(d) of Rules Governing § 2255 Proceedings for the United States District Courts regarding inmate filings, states, in pertinent part: "Timely filing may be shown by a declaration in compliance with 28 U.S.C. §1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid."

Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to file timely objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: September 2, 2009

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE